GEORGETOWN
UNIVERSITY, Petitioner,

v.

SPORTEC INTERNATIONAL, INC., et
al., Respondents.

No. 89–421.

District of Columbia Court of Appeals.

March 27, 1990.
As Amended April 23, 1990.

J. Alan Galbraith and William R. Murray,
Jr., Washington, D.C., for petitioner
Georgetown University.

Robert F. Condon, Washington, D.C., for
respondent Sportec Intern., Inc.

V. Frederic Lyon, Washington, D.C.,
John B. McCammon, Edward E. Nicholas
III, and William L. Thurston, Richmond,
Va., for respondent Daniel F. Tully Associates, Inc.

Before FERREN, BELSON and
TERRY, Associate Judges, in chambers.

PER CURIAM:

This case presents the issue whether we will decide a question of law, certified to us by the United States Court of Appeals for the District of Columbia Circuit, when the certified question is the subject of an interlocutory appeal in a case pending before the United States District Court for the District of Columbia. Under the circumstances, we decline to consider the certified question at this time.

I.

In early 1987, Georgetown University (Georgetown) contracted with Daniel F. Tully Associates, Inc. (Tully), an architectural firm, for design services related to the renovation of the roof of Yates Field House (Yates), an athletic facility located on the campus of Georgetown University. The renovation plans included the installation of a new track and field on the roof of Yates. Subsequently, on April 13, 1987, Georgetown entered into a separate contract with Sportec International, Inc. (Sportec), to act as general contractor for the project. No contractual relationship existed between Tully and Sportec. Under the terms of the Georgetown–Sportec contract, Sportec was to remove the existing athletic field, track, and external roofing from the top of Yates. In addition, Sportec was to

replace the roof and install artificial sports field and running track surfaces manufactured by Mondo Rubber International, Inc.

Before Sportec completed the track, bulges and blisters appeared on its surface. As a result, the track portion of the project was not completed. Georgetown advised Sportec that it was rejecting the track and demanded that it be removed and reinstalled per contract specifications. Subsequently, Georgetown filed a complaint in the United States District Court for the District of Columbia against Sportec alleging breach of contract and unjust enrichment.

Sportec answered and filed a third-party complaint against Tully alleging that Tully (1) negligently designed the track system which Sportec installed, and (2) fraudulently misrepresented and concealed design problems related to the running track. Thereafter, Tully moved to dismiss the third-party complaint on the ground that, absent privity of contract, it owed no duty to Sportec to protect it from economic loss, *i.e.,* that the bar of privity insulated Tully from professional tort liability for economic losses to third parties.

On February 8, 1989, the District Court denied Tully's motion to dismiss Sportec's claim. The court found that Sportec had stated a valid negligence claim against Tully for purely economic losses despite the lack of a contractual relationship. The court also found that the issue involved a controlling question of District of Columbia law as to which there is a substantial ground for difference of opinion. The court concluded that an immediate appeal of the February 8, 1989, order would materially advance the ultimate termination of the litigation. Further, the District Court suggested specifically that 28 U.S.C. § 1292(b)[1] certification would enable the United States Court of Appeals for the District of Columbia Circuit to certify the controlling questions of law to this court. Accordingly, Tully filed a petition for permission to appeal pursuant to 28 U.S.C. § 1292(b).

On April 28, 1989, the United States Court of Appeals granted Tully's petition for an interlocutory appeal, stating that "it is unclear in the District of Columbia whether the bar of privity completely insulates Tully from professional tort liability to third parties." Pursuant to D.C.Code § 11–723 (1989), the United States Court of Appeals certified the following question of law to this court:

Under District of Columbia law, does the bar of privity completely insulate an architect from professional tort liability for economic losses to third parties with whom the architect has no contractual relationship?

## II.

■ D.C.Code § 11–723(a) (1989) provides:

The District of Columbia Court of Appeals may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or the highest appellate court of any State, if there are involved in any proceeding before any such certifying court questions of law of the District of Columbia which may be determinative of the cause pending in such certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the District of Columbia Court of Appeals.

Application of this provision to the case at hand gives rise to two principal questions: (1) whether the statute authorizes this court to accept a certification of an issue that arises from an action still pending before a United States District Court, a court which is not authorized to certify

---

1. 28 U.S.C. § 1292(b) provides that
 [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order. . . .

questions of law under the terms of the statute, and (2) if this court is authorized to accept such a certification, whether it should do so in the exercise of its discretion in this case.

In general, when applying a statute, we are bound by the statute's plain meaning. "We must first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning." *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc) (quoting *Davis v. United States,* 397 A.2d 951, 956 (D.C. 1979)).

A reading of D.C.Code § 11–723 suggests no reason to conclude that we are not authorized to accept the instant certified question. D.C.Code § 11–723 draws no distinctions as to which types of appeals are appropriate vehicles for certified questions of law. Rather, it simply permits us to answer questions of law certified to this court by, *inter alia,* a United States Court of Appeals. On its face, therefore, the language of the statute appears to vest this court with discretion to entertain a certified question of law from a United States Court of Appeals even when the question is presented in an interlocutory appeal of a case pending before a District Court.

 Although the "plain meaning" rule is the initial step in statutory interpretation, it is not always the last step. This court has found it necessary to look beyond the plain meaning of statutory language in some situations. *Peoples Drug Stores, supra,* 470 A.2d at 754. One such situation is where, in order "to effectuate the legislative purpose," *id.* (quoting *Mulky v. United States,* 451 A.2d 855, 857 (D.C.1982)), as demonstrated by a review of the legislative history, *Floyd E. Davis Mortgage Corp. v. District of Columbia,* 455 A.2d 910, 911 (D.C.1983), we conclude that it is necessary to depart from the plain wording of a statute.

Our review of the legislative history in this instance reveals no need to depart from the plain language of the certification statute. We are satisfied that we should construe the statute's reference to ques-tions involved in "any proceeding" before a Court of Appeals of the United States to include interlocutory appeal proceedings like the one referred to us.

### III.

Our review of the legislative history of D.C.Code § 11–723 does persuade us, however, to decline, in the exercise of our discretion, to entertain at this time the certified question of law presented here. D.C. Code § 11–723 was enacted in 1986 as part of Public Law 99–573, 100 Stat. 3228, "The District of Columbia Judicial Efficiency and Improvement Act of 1986" (the Act). The legislative history reveals that Congress heard testimony advocating that the number of certifying courts under the proposed law be limited to those specified in the Act. At an October 1, 1985, hearing before the Subcommittee on Judiciary and Education of the House of Representatives Committee on the District of Columbia, the Ad Hoc Legislative Group of the District of Columbia Bar recommended that "certification [be] limited to the Supreme Court of the United States, the United States Courts of Appeals, and the highest courts of the states." Statement of Ad Hoc Legislative Group at hearing transcript p. 141. This limitation—which, notably, excluded the United States District Courts—was suggested as a method of achieving the goals of certification "without unduly burdening the District of Columbia Court of Appeals."

In testimony at the same hearing, John H. Pickering, Esq., Chairman of the District of Columbia Bar Courts Study Implementation Committee, echoed the sentiments of the Ad Hoc Legislative Group. Describing the certification provision of the Act, he noted that "this provision would not be used often and would not burden the District of Columbia Court of Appeals. That Court agrees and has no objection to the proposal." Statement of Mr. Pickering at hearing transcript, p. 202. Although the certification provision was a small and noncontroversial aspect of the Act, the few statements relevant to certification addressed to the Subcommittee suggest that Congress focused on the statute's limita-

tion of the number of courts allowed to certify questions to this court to those identified in the Act.

The certification provision of the Act was modeled after a uniform statute written by the National Conference of Commissioners on Uniform State Laws, the Uniform Certification of Questions of Law Act, 12 U.L.A. 52 (1975) (the Uniform Act). The Uniform Act contains practically the same language as that adopted in the certification provision of the District of Columbia Judicial Efficiency and Improvement Act of 1986. The primary difference between the Act and the Uniform Act is the inclusion in the Uniform Act of the United States District Courts on the list of courts having the authority to certify questions of law to the highest court of the state that adopts the Uniform Act. The fact that the Congress departed from the Uniform Act in this fashion gives further reason to conclude that it was particularly aware of the limitation upon the number of courts which could certify questions of law to this court. The language adopted in the Act and ultimately codified in D.C.Code § 11–723 is a direct departure from the Uniform Act.

Viewing the circumstances of the present certification in light of the legislative history, we observe that, while the United States Court of Appeals certified the question in the required manner, the certification is actually that of a question arising out of a case pending in the United States District Court, relayed to us by the United States Court of Appeals for our consideration. While this court welcomes the opportunity to respond to certifications pursuant to the statute and has done so on four occasions,[2] we conclude that the present case is one in which, in the exercise of our discretion, we should decline to entertain the certified question.

Our exercise of discretion is influenced by the same policy reasons that led to the decision of Congress to exclude the District Courts from the ranks of certifying courts. Extending the certification process to questions arising out of cases pending in the United States District Courts would create an obvious potential for burdening this court in a manner not contemplated by the Congress. Moreover, many issues, such as the doctrine of privity of contract at issue in this case, tend to be fact-specific. Because so many exceptions have been engrafted upon the rule of privity, an analysis of its applicability would be much more effective after a full record has been developed. "[A]ny extension of the limits of liability in this field should be done on a case-by-case basis with a careful definition of the limits of liability, depending upon the differing conditions and circumstances to be found in individual cases." *Westerhold v. Carroll,* 419 S.W.2d 73, 77–78 (Mo.1987). Consideration of a certified question before there has been a suitable development of the record, by a trial on the merits or otherwise, is likely to provide less valuable precedent than would result from consideration upon a fully developed record.

In sum, we conclude that, for reasons akin to those that led to the legislative decision to exclude the United States District Courts from the categories of courts authorized to certify pursuant to D.C.Code § 11–723, this court will decline to entertain the question certified by the United States Court of Appeals.

---

**2.** *See Railco Multi–Construction Co. v. Gardner,* 564 A.2d 1167 (D.C.1989); *Delahanty v. Hinckley,* 564 A.2d 758 (D.C.1989); *Edwards v. Mutual of Omaha Ins. Co.,* 530 A.2d 1190 (D.C.1987); *Penn Mutual Life Ins. Co. v. Abramson,* 530 A.2d 1202 (D.C.1987).